MINNIE B. DICKINSON, Appellant, v. MARTIN V. STEVENSON, Appellee.

**Equitable jurisdiction:** FRAUD: TRANSFER OF CAUSES. Courts of equity have jurisdiction to grant relief in cases of fraud involving a breach of either a legal or equitable duty, trust or confidence, by which an unconscionable advantage has been obtained, even though a court of law on account of its fixed rules could afford no remedy; and where the petition, as in the instant case, states a cause of action calling for equitable relief it is reversible error to transfer it to the law docket.

**Same:** FRAUD: EVIDENCE. One employed by a husband seeking a divorce from his wife to adjust their property rights, who falsely represented to her that the husband would pay her nothing, and that he was the only person who could induce him to pay her anything, although such person was then in possession of a sum of money with directions to pay it over to her, and by such representations induced her to accept one half the sum so held by him was guilty of a fraud, justifying a decree directing him to pay over the balance of the money in his hands.

**Appeal:** DIRECTED VERDICT: REVIEW. On appeal from a directed verdict for defendant the court will accept as true the facts as shown by plaintiff's evidence.

*Appeal from Buchanan District Court.*—HON. FRANKLIN C. PLATT, Judge.

SATURDAY, MARCH 13, 1909.

REHEARING DENIED WEDNESDAY, MAY 12, 1909.

THIS action was brought in equity for an accounting by defendant of money had and received by him on plaintiff's behalf, for judgment in the sum of $2,500, and to set aside a settlement between the parties because procured by fraud. On defendant's motion the case was transferred to the law calendar, and over plaintiff's exceptions and objections tried to a jury, resulting in a directed verdict for defendant, and plaintiff appeals.—*Reversed* and *remanded*.

*W. F. Fitzgerald* and *Springer & Smith,* for appellant.

No appearance for appellee.

DEEMER, J.—The material allegations of the petition are as follows:

Par. 1. That on or about the month of November, 1903, she was the wife of one George W. Dickinson, and with whom she then resided in Buchanan County, Iowa.

Par. 2. That on said date she and her said husband, George W. Dickinson, had disagreed, and her said husband was seeking a separation and a divorce from this plaintiff, and was desirous of adjusting all property matters and alimony between this plaintiff and her said husband out of court, and the said George W. Dickinson, with the intention of adjusting all such matters, sent the defendant herein, Martin V. Stevenson, to this plaintiff and instructed him, the said Martin V. Stevenson, to inform the plaintiff that he would give her $5,000 in cash in addition to some other property already given in full of all such claims, and the said Martin Stevenson came to plaintiff and informed her that her said husband had refused to give her a single dollar, but that he, the said George W. Dickinson, was a friend to this defendant herein, and that he could procure

for her by his influence with her said husband the possible sum of $2,500. And the said Martin V. Stevenson returned to the said George W. Dickinson with the statement that this plaintiff would not accept anything less than $10,000, and by such false statement caused this plaintiff great trouble and anxiety in said matter, when she was willing to accept the $5,000 her husband had offered through this defendant.

Par. 3.    That immediately afterwards this defendant came to plaintiff and represented to her that said George W. Dickinson would pay the sum of $5,000 in settlement of such matter, but only on condition that the defendant, Stevenson, should be permitted to receive $2,500 thereof, and that said George W. Dickinson was unwilling to pay to the plaintiff for her use in such settlement any sum in excess of $2,500, and, unless she would allow defendant one-half such money as he might obtain for her, that she would not receive $1, and made threats at the time that unless this matter was fixed somebody would be killed. Whereupon this defendant proceeded to the said George W. Dickinson, who gave him $5,000 to deliver to this plaintiff and instructed him to deliver it, being at all times willing to do so, and this defendant by false pretenses and representations aforesaid, as well as statements to this plaintiff that unless she accepted his proposition, and allowed him to keep one-half the money, which he then had in his possession, that there would be some one killed, and he thereby induced plaintiff under such circumstances and false representations to allow him to keep one-half of said $5,000, to wit, $2,500.

Par. 4.    That said sum of $2,500 was obtained from this plaintiff at the time by the defendant by the false representations aforesaid, and this plaintiff was induced to part with said money and allow him to retain possession of it, relying upon the statements which were false and known to be false by the defendant.

The motion to transfer was based upon the grounds: (a) That plaintiff had a plain, speedy and adequate remedy at law; and (b) that the petition does not state any such facts as to give a court of equity jurisdiction.

Complaint is made of the ruling transferring the case.

The rule as generally announced is that courts of equity have jurisdiction to relieve in cases of fraud, and that, in so far as the law affords relief, the juris-

1. EQUITABLE
JURISDICTION:
fraud:
transfer
of causes.

diction is concurrent. *Arnold v. Grimes,* 2 G. Greene, 77; *Wyckoff v. Machine Co.,* 43 Mich. 309 (5 N. W. 405); *Montreal Bank v. Waite,* 105 Ill. App. 373. However, the tendency now is to hold that, where the legal remedy is full, adequate, sufficient and speedy, courts of equity will decline to consider the case. *Anderson v. Eggers,* 63 N. J. Eq. 264 (49 Atl. 578, 55 L. R. A. 570). Yet, notwithstanding this tendency, there yet remains a large field where a party is helpless at law, and the jurisdiction of equity may properly be said to be exclusive. Equity will treat as fraudulent many transactions which would not be so regarded at law, and the precise extent of its jurisdiction in this respect has never been defined. Nor should it be, for fraud is made to assume manifold forms limited only by the fertility of man's invention. Equity will often interfere and give relief against an inequitable and unconscionable advantage gained by another, although the law on account of its fixed rules would not have afforded a remedy. *Gargano v. Pope,* 184 Mass. 571 (69 N. E. 343, 100 Am. St. Rep. 575). As illustrations of this, courts of equity will assume jurisdiction and grant relief because of the relations existing between the parties, such as trust or confidence. *Cannon v. Gilmer,* 135 Ala. 302 (33 South. 659); *Harkness v. Fraser,* 12 Fla. 336; *Briggs v. Withey,* 24 Mich. 136; *Somervaill v. McDermott,* 116 Wis. 504 (93 N. W. 553). Equity also imposes a higher duty than law with regard to the disclosure of matters of which one party is ignorant. *Goodell v. Goodell,* 173 Mass. 140 (53 N. E. 275). And as a general rule it may be said that fraud in equity includes all acts, omissions, and concealments which involve a breach of either legal or equitable duty, trust, or confidence, justly reposed. *Belcher v. Belcher,*

10 Yerg. (Tenn.) 121. Equity always has jurisdiction of an accounting proceeding growing out of fiduciary relations. As early as the year 1849, this court followed the rule announced in *Belcher v. Belcher, supra,* and said: "Fraud in a court of equity properly includes all acts, omissions and concealments which involve a breach of either a legal or equitable duty, trust or confidence justly reposed and are injurious to another or by which an undue or unconscientious advantage is taken of another." *Arnold v. Grimes,* 2 G. Greene, 80. The present case is one which comes clearly within these rules. The trial court found that, under the strict rules of the common law, plaintiff was not entitled to recover, although the defendant did not earn the money retained by him, and received it by reason of the relations of trust and confidence existing between him and the plaintiff. The petition, as we think, states a cause of action in equity for fraud, and the court was in error in ordering a transfer to the law docket. Such in order when not justified, constitutes reversible error.

II. But it is argued that the trial court was justified in directing a verdict for defendant, and that the error in making the transfer was without prejudice. As already observed, one may recover in equity although under the same facts he may not have been entitled to relief at law; but if under the record as made he was not entitled to relief in equity, the order of transfer was without prejudice. There was testimony tending to show that in the fall of 1903, and for some time previous thereto, plaintiff's husband was away from home, seeking a final separation from plaintiff and trying to get her to abandon her homestead. Plaintiff was seeking a reconciliation with her husband and trying to induce him to return to his home and resume his prior relations. Defendant was living at the Dickinson home, having gone there at the instance and request of the husband although this fact was concealed from plaintiff. He

2. SAME: fraud: evidence.

(defendant) represented to plaintiff that he was the only true friend that she had on earth. He stated to her that her husband was trying to oust her from the homestead and turn her out without a dollar, and represented to her that on account of his friendship with her husband he might be able to procure a sum of money from him if she would give up the home amicably. He told her that he was the only one who could obtain anything from the husband, and advised her to "steer clear of attorneys." He represented that he was the only one who could bring the husband and wife together, although at that very time he was in the employ of the husband for the purpose of procuring a divorce and getting a settlement with the wife. Relying upon defendant's representations that he was the only one who could do anything for her, and that if she did not make some sort of settlement the husband would get a divorce and turn her out without anything, and believing that defendant was laboring with the husband on her behalf, she entered into a contract with defendant agreeing to give him one-half of what he received from the husband for leaving the homestead. The testimony shows that at this very time defendant was representing and drawing pay from the husband, and was ostensibly at least looking after her interests. There is also testimony tending to show that most of the statements made by defendant were false and untrue; that he was, in fact, working for and in the interest of the husband; that the husband was at all times ready and willing to pay the plaintiff $5,000, which defendant well knew; that he did in fact pay that amount, one-half of which she paid over to defendant in ignorance of the true situation; and that she did not discover the facts until long afterwards, when she met her former husband by chance and from him learned the true situation. There was also testimony to the effect that defendant told plaintiff's husband to keep away from plaintiff, because under the condition she was in she was liable

to shoot him.   If this testimony be true, it is manifest that a court of equity should grant relief upon several grounds: First, because defendant concealed his true relations with the husband from plaintiff and took advantage of his situation for the purpose of defrauding her.   Second, he pretended to be her agent and was bound in that relation to exercise good faith.   He knew that the husband was willing to pay her (plaintiff) the sum of $5,000 when he induced the plaintiff to allow him to act for her in the matter, and by his concealment perpetrated a fraud.   Third, he took advantage of plaintiff by assuming to be her friend, and to act for her on the statement that he was the only one who could get anything from the husband, induced her to keep away from attorneys, and prevented husband and wife from getting together, by falsely stating to the husband that he should not go into the presence of the wife for the reason that she might shoot.   Surely these facts, if true—and we must so accept them for the purpose of this case—constitute such fraud as would justify a court of equity in ordering an accounting from defendant and directing him to refund the money received by him from plaintiff.

We must not be understood as holding that these are the facts.   Defendant introduced no testimony upon the trial before the jury, and we have simply given the plaintiff's side of the case.   That these facts, if established, constituted actionable fraud, see *Hanson v. Kline,* 136 Iowa, 101; *Mattauch v. Walsh Bros.,* 136 Iowa, 225; *Donaldson v. Eaton,* 136 Iowa, 650.   The last case cited is very closely in point and clearly rules the one at bar.

3. APPEAL: directed verdict: review.

For the errors pointed out, the judgment must be reversed and the cause remanded for a retrial on the equity side of the docket.—*Reversed* and *remanded.*